Filed 4/3/14  P. v. Shay CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064275 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE328033) |
| BRIAN P. SHAY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath Jr., Judge.  Affirmed.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Brian P. Shay guilty of receiving stolen property (Pen. Code, § 496, subd. (a)), and Shay admitted a prison prior (*id.*, §§ 667.5, subd. (b), 668).[1] The trial court sentenced Shay to a four-year prison term, two years of which was suspended to be served on probation.

Shay contends that the trial court prejudicially erred in denying his motion to suppress statements he made at the scene of his arrest in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). We conclude that Shay's argument is without merit, and accordingly we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

While Adam Headrick's truck was parked on the street in La Jolla on the evening of February 26, 2013, business records and construction tools, including an air compressor, were stolen from his vehicle. The construction tools were marked with Headrick's initials.

Returning to his truck shortly after the theft, Headrick drove around the neighborhood to try to locate the stolen items. He saw a white Ford Ranger pickup truck with what he thought was his air compressor in the back of the truck. Someone was riding in the bed of the truck and ducked down as Headrick approached. Headrick pulled up next to the truck and told the driver that he thought his air compressor was in the truck. The driver denied the accusation, claiming the air compressor was a grill. Because

---

[1] Unless otherwise indicated, all further statutory citations are to the Penal Code.

there were at least four people in the truck, Headrick decided not to pursue the confrontation and instead left the scene and called police to report the crime. At trial, Headrick did not recognize Shay as anyone he saw in the Ford Ranger truck.

A few hours later, early in the morning of February 27, 2013, a report was made to police of someone looking into car windows and accessing the contents of a pickup truck in the parking lot of a Walmart in El Cajon.

Deputy Sheriff Benjamin Chassen arrived on the scene around 2:25 a.m. According to testimony at the pretrial suppression hearing, Deputy Chassen saw Shay standing in the parking lot at the back tailgate of a white Ford Ranger pickup truck. The bed of the truck contained construction tools, including an air compressor, along with a bicycle that Shay was working on.

Deputy Chassen became suspicious when he ran the license plate and determined it was not assigned to that vehicle. After noticing several people inside the cab of the truck, Deputy Chassen called for other officers to assist him. For safety purposes, Deputy Chassen told Shay to stay where he was and keep his hands visible and told the occupants of the truck to stay inside. Upon initial questioning, Shay told Deputy Chassen that he was working on a bicycle in the back of the truck, that he was on parole, and that he was not employed.

Four other officers arrived at the scene. At some point after the other officers arrived, Deputy Chassen conducted a patdown search of Shay and located syringes on Shay's person. Deputy Chassen went to speak to the occupants of the truck's cab while another officer watched Shay. From the conversation with the people inside the truck,

3

Deputy Chassen determined that the truck was not stolen, but that the driver had switched license plates with another vehicle because the registration had expired.

Deputy Chassen directed the occupants of the truck cab to exit the vehicle. Upon being questioned, the driver of the truck stated that the tools in the back of the truck belonged to Shay. Shay was still standing near the rear of the truck, and Deputy Chassen asked Shay about ownership of the tools. Shay stated that the tools were his. Deputy Chassen asked Shay why he had the tools if he was not currently employed. Shay indicated that some of the tools were from his grandfather who lived in La Jolla. It was approximately 15 to 20 minutes from the time Deputy Chassen first contacted Shay to the time he asked Shay about the ownership of the tools.

The truck was then searched, and officers located a passport, a debit card and a checkbook belonging to Adam Headrick behind a seat. Deputy Chassen suspected those items were stolen. In the bed of the truck, officers found tools marked with initials corresponding to Adam Headrick. Deputy Chassen did not see the initials on the tools before questioning Shay about ownership of the tools. After connecting the initials on the tools to the name on the passport and other items in the truck cab, Deputy Chassen placed Shay under arrest based on his claim of ownership of the tools. Headrick later identified the tools in the Ford Ranger truck as those stolen from him.

Shay was charged with receiving stolen property (§ 496, subd. (a)) and burglary (§ 459), with the further allegation of a prison prior.

Shay made a pretrial motion to exclude the statements he made to Deputy Chassen about his ownership of the tools. The trial court denied the motion to exclude Shay's

4

statements, ruling that the questioning was investigative and Shay was not in custody. The trial court specifically found that Deputy Chassen did not suspect Shay of committing any particular crime at the time he questioned Shay about the ownership of the tools.

The jury found Shay guilty of receiving stolen property and not guilty of burglary. Shay admitted the prison prior. The trial court sentenced Shay to a four-year prison term, and suspended two years of that sentence to be served on probation.

## II

## DISCUSSION

Shay's sole appellate argument is that the trial court prejudicially erred in denying his motion to suppress evidence of the statements he made to Deputy Chassen because he was not advised of his *Miranda* rights prior to questions about the ownership of the tools.

A. *Applicable Legal Standards*

The general rule excluding statements obtained in violation of *Miranda* is well established. "*Miranda . . .* , *supra,* 384 U.S. 436, and its progeny protect the privilege against self-incrimination by precluding suspects from being subjected to custodial interrogation unless and until they have knowingly and voluntarily waived their rights to remain silent, to have an attorney present, and, if indigent, to have counsel appointed." (*People v. Gamache* (2010) 48 Cal.4th 347, 384.) Statements obtained in violation of *Miranda* are generally inadmissible to establish guilt. (*People v. Sims* (1993) 5 Cal.4th 405, 440.) " 'Absent "custodial interrogation," *Miranda* simply does not come into play.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.)

5

Shay argues that a *Miranda* warning was required when Deputy Chassen asked him about the ownership of the tools because he was both (1) in custody and (2) being interrogated within the meaning of *Miranda*. The standard of review that applies to the trial court's ruling on the issues of custody and interrogation is well-settled. "While a reviewing court must apply a deferential substantial evidence standard to the trial court's factual findings, it must independently determine whether the defendant was *in custody*." (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 38, italics added (*Bejasa*).) As it is primarily a factual determination, "[w]e review the trial court's finding regarding whether *interrogation* occurred for substantial evidence or clear error." (*People v. Clark* (1993) 5 Cal.4th 950, 985, italics added.)

B.    *Miranda Does Not Apply Because Shay Was Not in Custody*

We begin by examining whether Shay was in custody when Deputy Chassen asked him about ownership of the tools.

"An interrogation is custodial when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] Whether a person is in custody is an objective test; the pertinent inquiry is whether there was ' " 'a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " ' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400 (*Leonard*).) The essential inquiry is whether, based on the trial court's factual findings regarding the circumstances surrounding the interrogation, " 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave.' " (*Ibid*.) " 'In determining whether an individual was in custody, a court must examine all of the

6

circumstances surrounding the interrogation . . . .' " (*Bejasa*, *supra*, 205 Cal.App.4th at p. 35.)

"California courts have identified a number of factors relevant to [the custody] determination.  While no one factor is conclusive, relevant factors include: ' "(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." '  [Citations.]  [¶] Additional factors include:  '[W]hether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were "aggressive, confrontational, and/or accusatory," whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview.' " (*Bejasa*, *supra*, 205 Cal.App.4th at pp. 35-36.)  "[T]he term 'custody' generally does not include 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." (*People v. Farnam* (2002) 28 Cal.4th 107, 180.)

Here, the totality of the circumstances show that Shay — along with the other occupants of the truck — were merely being temporarily detained while Deputy Chassen investigated the situation to determine whether anyone was engaged in unlawful activity. Shay's movement was not physically restrained by handcuffs or confinement.  Instead,

7

Shay, along with the occupants of the truck, had been told to stay in place, with their hands visible, for officer safety reasons, while the officers investigated the situation. There is no indication that Deputy Chassen or any of the other officers were aggressive, confrontational, or accusatory, or that they pressured Shay. Significantly too, the length of the detention was not great, lasting only long enough for the officers to investigate the situation, and it occurred in a public place, not in a confined space.

Most importantly, we find no indication that a reasonable person in Shay's position would believe, prior to being questioned, that he was being placed under arrest rather than being subjected to preliminary investigative questions so that the officers could assess the situation. Only *after* Deputy Chassen questioned Shay were Headrick's documents found in the cab of the truck, corresponding to Headrick's initials on the tools in the truck bed. Those were the facts that led Deputy Chassen to suspect Shay of a particular crime and place him under arrest. Indeed, the trial court expressly found that at the time he questioned Shay, Deputy Chassen did not know that any particular crime had been committed. We defer to that factual finding, which is supported by substantial evidence. (*Bejasa*, *supra*, 205 Cal.App.4th at p. 38.)

These circumstances, in totality, convince us that Shay was not in custody when questioned about the ownership of the tools.

Shay contends that he believed he was being placed under arrest and was not free to leave because he had admitted to being on parole and Deputy Chassen discovered syringes on his person. However, we find no indication in the record that Shay was under threat of arrest for possession of the syringes. Although possession of drug paraphernalia

8

is a crime (Health & Saf. Code, § 11364.1, subd. (a)), the statute creates a safe harbor for the possession of syringes "solely for personal use of 30 or fewer hypodermic needles or syringes if acquired from a physician, pharmacist, hypodermic needle and syringe exchange program, or any other source that is authorized by law to provide sterile syringes or hypodermic needles without a prescription." (*Id*., subd. (c).)  The record contains no evidence that Deputy Chassen believed that Shay's possession of the syringes violated the law; the syringes contained no controlled substances; and there is no indication of any signal by Deputy Chassen that he intended to take action against Shay for possession of the syringes.  Significantly, Deputy Chassen stated at the suppression hearing that he did not take note of where the syringes were found on Shay's person because "it wasn't a crime."

Shay contends that this case is like *Bejasa*, *supra*, 205 Cal.App.4th 26, which concluded that the defendant, a parolee, was in custody within the meaning of *Miranda*, after police officers discovered syringes when searching him after a traffic collision. However, *Bejasa* is not persuasive here because the facts are significantly different.  In *Bejasa*, a search of the defendant revealed two syringes, one of which contained methamphetamine, and the defendant admitted he used the syringe to " 'shoot up methamphetamine.' " (*Id*. at p. 33.)  The defendant was handcuffed, placed in the back of a police car and told he was being detained for a possible parole violation.  (*Ibid*.)  *Bejasa* explained that "a reasonable person in defendant's position would know that possession of methamphetamine and related paraphernalia is a parole violation and a crime, and that

9

arrest would likely follow." (*Id.* at p. 37.)  Here, in contrast, no drugs were present, and there was no indication that Deputy Chassen had noted any parole violation.

Even more important, *Bejasa* commented that *even if* the presence of the syringe filled with methamphetamine was not enough to create a custodial situation, the defendant was clearly put into custody when he was handcuffed and placed in the police car.  (*Bejasa*, *supra*, 205 Cal.App.4th at pp. 37-38.)  In contrast, here, Deputy Chassen did not restrict Shay's movement after finding the syringes.

Accordingly, although there is a superficial similarity between this case and *Bejasa* because the defendants in both cases were on parole and possessed syringes, the additional factors in *Bejasa* that created a custodial situation are not present here.

Based on the totality of the circumstances, we conclude that there was no " ' " ' "restraint on freedom of movement" of the degree associated with a formal arrest.' " ' "  (*Leonard*, *supra*, 40 Cal.4th at p. 1400.)  At the point Shay was questioned, Deputy Chassen had only temporarily detained him to investigate the situation and did not suspect any specific crime had been committed.  Accordingly, Shay was not in custody, and the trial court properly determined that *Miranda* did not apply.[2]

---

[2]    Because we determine that Shay was not in custody, we need not and do not determine whether Deputy Chassen's questions constituted interrogation within the meaning of *Miranda*.

10

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McDONALD, Acting P. J.

O'ROURKE, J.